JgPETTIGREW, J.
The instant suit was filed by David H. Cliburn against the Police Jury Association of Louisiana, Inc. (“Police Jury”) seeking refund of retirement benefits he was allegedly entitled to, as a result of legal services he rendered to the Police Jury. Following a bench trial, judgment was rendered in favor of David H. Cliburn. For the reasons that follow, we reverse in part, amend, and as amended, affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, David H. Cliburn, was engaged by the Police Jury to render legal, lobbying, and other services for the period beginning August 17, 1993, and ending on or about January 15, 1996. Cliburn initially worked as a lobbyist for the Police Jury during the legislative session. When the legislative session ended, Cliburn continued working for the Police Jury on various matters, including, but not limited to, a lawsuit involving the timber industry, an area in which Cliburn was very knowledgeable. According to the record, Cliburn *901 was paid an hourly rate based on time sheets that he submitted to the Police Jury. The Police Jury provided Cliburn with an office, and he was allowed to use office machines and support staff at his discretion. As part of the negotiated terms of his employment, Cliburn was allowed to maintain a private law practice and, in fact, often met with clients at his Police Jury office.
The nature of the employment relationship between Cliburn and the Police Jury was, and still is, at issue in this case. Cliburn testified that when he initially began working for the Police Jury while in law school, he was contracted to work on an hourly basis at a rate of $85.00 per hour during the legislative sessions.[2] Cliburn acknowledged that during this time, he was not an employee of the Police Jury. He further noted that this verbal “contract” with the Police Jury ended with the 1992 legislative session. Cliburn stated that in August of 1993, he met with James Hays, Executive Director of the Police 13Jury, to discuss his working for the Police Jury on a “regular basis” to handle “a problem with some timber taxes” and future legislative sessions. According to Cliburn, he agreed, but only with the understanding that he would be paid $35.00 per hour, with a minimum of four hours per day, and that the Police Jury would make the standard payroll deductions from his paycheck and report his wages on a W-2 form for tax purposes. Cliburn also indicated that he requested that he be enrolled in the health plan that was provided to all Police Jury employees. Cliburn testified that in his mind, “[a]round the 17th of August [he] started to work as an employee for the Police Jury Association.”
On the other hand, Hays consistently referred to Cliburn as a “contract employee.” Hays testified that he initially hired Cliburn while Cliburn was in law school at a rate of $8.00 per hour to lobby for the Police Jury during the legislative session. Then in August of 1993, Cliburn returned to work for the Police Jury at an hourly rate of $35.00. Hays indicated that because of the way Cliburn conducted himself in and around the legislature, he was prepared to terminate Cliburn’s employment when the litigation involving the timber industry began. Believing that Cliburn’s knowledge of the timber industry would be beneficial to the Police Jury, Hays assigned Cliburn to the timber case amongst other things. Hays maintained, however, that he never viewed Cliburn as anything other than a contract employee who was going to be released from his duties with the Police Jury after the timber case was completed. When asked what criteria he used in determining whether Cliburn was an employee or a contract employee, Hays stated:
Mr. Cliburn came and went, as he so desired. He was not on a basis of being there at 8:30 to 4:30. He did some practices of law that did not indicate that he’s an employee. Very simple. He was not an employee. He was a contract employee. We agreed on the hourly basis all down the line.
Hays further testified that while lobbying during the legislative session, Cliburn “had the discretion to do what was necessary.”
With regard to the taxes withheld from Cliburn’s check and Cliburn’s participation in the Police Jury’s health plan, Hays stated he never authorized anyone to allow Cliburn to enjoy these benefits. According to Hays, only employees of the Police Jury were |4eligible to participate in the health plan. Hays indicated it was- not until Cliburn filed a claim for an injury with the health insurance that he was aware Cliburn was participating in the health plan. Once he realized Cliburn was *902 injured, Hays decided not “to take issue with him being in the program.” In fact, when Cliburn was terminated, Hays signed a COBRA Continuation Form to allow Cliburn to stay in the health plan because he “was trying to help ... Cliburn.”
One issue that both Hays and Cliburn agreed on was the fact that Cliburn was not allowed to participate in the Parochial Employees’ Retirement System (“PERS”). When Cliburn was hired by Hays, he inquired as to whether he would be enrolled in PERS. Hays testified that Cliburn was not allowed to enroll in PERS because he was a contract employee and, therefore, not eligible to participate in the retirement system. Cliburn, however, indicated that when he inquired of Hays as to whether he would be allowed to enroll in PERS, Hays told him no because “it costs too much.” Nonetheless, the record is clear that Cliburn did not participate in PERS and no contributions were made on his behalf.
Following termination of his employment with the Police Jury, Cliburn undertook various efforts to secure participation in PERS. Cliburn corresponded with Tom Sims, Administrative Director of PERS, in May 1996, seeking to withdraw his “accumulated contributions.” In subsequent letters from Sims, Cliburn was notified that no contributions had been made on his behalf and that “employment status” was routinely determined by the “employer group.” Thereafter, on January 15, 1997, Cliburn filed suit against the Police Jury in the United States District Court for the Middle District of Louisiana, claiming an entitlement to PERS benefits under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq. By order dated October 30, 1997, Cliburn’s claims were dismissed for lack of subject matter jurisdiction.
Cliburn then filed suit in the Nineteenth Judicial District Court on April 6, 1998, seeking a judgment against the Police Jury ordering them to make the necessary contributions to PERS on his behalf, including legal interest, and ordering the Police Jury to pay penalties, attorney fees, and costs pursuant to La. R.S. 23:632. In a “Petition For | ¡Payment Of Past Due Wages,” Cliburn asserted that he was eligible to participate in PERS during his employment with the Police Jury. Cliburn further claimed that the Police Jury’s failure to enroll him in PERS was in violation of La. R.S. 23:631. The matter proceeded to a bench trial at which time the Police Jury maintained that Cliburn was an independent contractor who was not eligible to participate in PERS. The Police Jury further argued that any retirement benefits allegedly due were not “wages” for purposes of La. R.S. 23:631 and 23:632 and should not be treated as such.
Following a two-day bench trial, judgment was rendered in favor of Cliburn. The trial court found that Cliburn was an employee of the Police Jury and was entitled to receive benefits from PERS. In a judgment dated April 7, 1999, the court ordered the Police Jury to pay Cliburn $30,720.40, plus interest, attorney fees in the amount of $5,863.45, and all costs of the proceeding. This award represented both the employer and employee contributions that would have been made to PERS on Cliburn’s behalf during his employment with the Police Jury. The Police Jury timely filed a motion for a new trial, which was later denied by the trial court. Thereafter, the Police Jury suspensively appealed the April 7, 1999 judgment, assigning as error: (1) the trial court classifying PERS benefits as past due wages; (2) the trial court finding that Cliburn was a Police Jury employee; (3) the trial court failing to find Cliburn’s claim prescribed under La. Civ.Code art. 3494; (4) the trial court rendering a judgment inconsistent with the relief sought by Cliburn; (5) the trial court ordering the payment of interest in a manner inconsistent with La. R.S. 11:2014 and 11:2016; and (6) the trial court awarding attorney fees to Cliburn.
In answering the Police Jury’s appeal, Cliburn not only refuted the arguments set forth by the Police Jury in its appeal, but *903 also raised two additional issues for review, namely: (1) should the trial court have awarded penalty wages as provided for in La. R.S. 23:632; and (2) should there be additional attorney fees awarded for services performed in connection with the appeal.
J^CLIBURN’S EMPLOYMENT RELATIONSHIP WITH THE POLICE JURY
The threshold issue to be decided in this case is whether Cliburn was an employee of the Police Jury and, thus, entitled to participate in PERS. For purposes of PERS, “employee” is defined in La. R.S. 11:1902(12) as follows:
(12)(a) “Employee” means any person who is employed as a permanent employee of a parish who works at least twenty-eight hours a week and whose compensation is paid wholly or partly by said parish, but excluding all persons employed by a parish or city school board, and all persons eligible for any other public retirement system in this state.
(b) “Employee” shall also mean a person employed by either the Police Jury Association of Louisiana, the Louisiana School Boards Association, or this retirement system and elected officials of the governing authority of any parish covered by this Chapter, and shall include members of school boards at their options. In any case of doubt, the board of trustees shall be the sole judge of who is an employee.
(e) “Employee” shall also mean a person employed by a district indigent defender program in this state, without regard to the source of funds for such districts or programs, provided the employee works at least twenty-eight hours a week. No person employed by an indigent defender program shall be entitled to receive credit for service rendered prior to becoming eligible for membership in the system.
(d) “Employee” shall also mean a person employed by a soil and water conservation district in this state, without regard to the source of funds for such districts.
In making the determination that Cliburn was an employee of the Police Jury, the trial court found that application of the rules of law set forth in Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972), mandated a finding of employee status. In Hickman, the Louisiana Supreme Court found the following factors ■ relevant in determining whether the relationship of principal and independent contractor exists: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance |7at the will of either side without a corresponding liability for its breach. Hickman, 262 So.2d at 390-91.
In the instant case, the trial court found that the first four of the five Hickman factors were met. With regard to the fifth Hickman factor, the court held “there was no specific time or duration of his employment, aside from the eighty hours per month stipulation, and there were apparently no liabilities on either side for a breach of the employment contract.” In addition to the fifth Hickman factor, there were other facts specific to this case that led the court to determine that Cliburn was an employee of the Police Jury rather than an independent contractor. The court noted that Cliburn’s salary during his employment with the Police Jury was reported as wages for income tax *904 purposes. The court also recognized that Cliburn had been afforded workers’ compensation coverage and had, in fact, made a claim against same during his employment with the Police Jury. Considering all of the evidence before it, the court concluded:
All of these factors are indicia of employment status, rather than that of independent contractor.
As such, defendant was required to pay benefits into the Parochial Employee’s [sic] Retirement System of Louisiana for the benefit of Mr; Cliburn from his initial employment' date of August 17, 1993, through his termination on January 15,1996.
While we agree with the trial court’s decision that Cliburn was an employee of the Police Jury, we conclude that the trial court erred in finding that four of the five factors set forth in Hickman were met in this case. Our review of the record reveals that in addition to the fifth Hickman factor not being satisfied, the third and fourth Hickman factors were not met in this case, providing further support for the conclusion that Cliburn was an employee of the Police Jury.[3]
J^PERS BENEFITS AS PAST DUE WAGES
On appeal, the Police Jury assigned error to the trial court’s classification of PERS benefits as past due wages. The Police Jury had previously raised this argument in an exception raising the objection of no cause of action, which was denied by the trial court. According to the trial court’s reasons for judgment, the court not only determined that Cliburn was entitled to receive $30,720.40, plus interest at a rate of one and one-half percent per month, but also ordered the Police Jury to pay Cliburn reasonable attorney fees in the amount of $5,863.45.
The question of whether La. R.S. 23:631 and 23:632 are applicable in the instant case presents a legal question. Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. City of Baker School Board v. East Baton Rouge Parish School Board, 99-2505, p. 2 (La.App. 1 Cir. 2/18/00), 754 So.2d 291, 292. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Northwest Louisiana Production Credit Association v. State, Department of Revenue and Taxation, 98-1995, p. 3 (La.App. 1 Cir. 11/5/99), 746 So.2d 280, 282. If the appellate court finds that a reversible error of law was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989).
Louisiana Revised Statute 23:631 imposes a duty on the employer, upon discharge or resignation of any employee, to pay the employee the amount then due, under the terms of the employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Further, La. R.S. 23:632 provides for penalty wages and attorney fees to be assessed against those employers who do not pay in the manner directed by La. R.S. 23:631. These statutes, being penal in nature, must be strictly construed and their provisions yield to equitable defenses. Boudreaux v. Hamilton Medical Group, Inc., 94-0879, p. 4 (La.10/17/94), 644 So.2d 619, 621.
*905 | flBased on our review of the applicable statutes and jurisprudence, we agree with the Police Jury that PERS benefits are not past due wages as contemplated by La. R.S. 28:631. It was legal error for the trial court to apply La. R.S. 28:631 and 23:632 to the facts of this case. There may, however, be another remedy available to Cliburn to recover the PERS benefits that he alleges he was entitled to as a result of his employment with the Police Jury. Thus, we are constrained to conduct a de novo review of the record to “redetermine the facts” and “render a judgment on the merits.” See Rosell, 549 So.2d at 844 n. 2.
Having determined that Cliburn was an employee of the Police Jury, we look now to the statutes governing PERS to ascertain whether Cliburn was entitled to participate in PERS during his employment with the Police Jury. PERS was established in 1953 for the purpose of providing retirement benefits to the employees of the parishes of this State. La. R.S. 11:1901. Pursuant to La. R.S. 11:1921(A)(1), participátion in PERS is mandatory for “all employees not specifically excluded by this Part.” Review of the applicable statutes reveals no exclusion that would operate to prevent Cliburn from participating in PERS. Thus, Cliburn’s participation in PERS was mandatory as was the Police Jury’s duty to make contributions to PERS on Cliburn’s behalf.
According to the record, employees of the Police Jury are members of Plan A. Pursuant to La. R.S. ll:62(8)(a), the rate of employee contributions to PERS for members of Plan A is 9.5 percent.[4] As set forth in La. R.S. 11:1935, a participant in PERS who is not eligible to retire but ceases to be an employee is entitled to receive “the amount of his accumulated contributions upon demand.”[5] Further, any such refunds of accumulated Imcontributions are not required to be made until 30 days after the effective date of the participant’s termination, resignation, or death. La. R.S. 11:1935(D).
By not enrolling Cliburn in PERS and making the necessary contributions on his behalf as it had done for all other employees, the Police Jury has failed to perform its obligations under the contract. Compare Andrepont v. Lake Charles Harbor and Terminal District, 602 So.2d 704, 708-11 (La.1992) (holding that pursuant to general obligations law, employer was liable to employee for contributions to the Louisiana State Employees’ Retirement System that would have been made on employee’s behalf during his employment had he not been improperly discharged without cause). Louisiana Civil Code article 1994 provides as follows:
An obligor is liable for the damages caused by his failure to perform a conventional obligation.
A failure to perform results from nonperformance, defective performance, or delay in performance.
With regard to damages, La. Civ.Code art.1996 provides that “[a]n obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made.” Further, La. Civ.Code *906 art.1997 provides that “[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.” In the instant case, it is unnecessary to determine whether the Police Jury acted in good or bad faith in breaching the employment contract with Cliburn. At the time the contract was made, Cliburn’s loss of the benefit of retirement contributions, and resulting injury, were clearly foreseeable. See Andrepont, 602 So.2d at 709-710.
The Police Jury was statutorily mandated to make PERS contributions on Cliburn’s behalf. In fact, during Cliburn’s employment with the Police Jury, the Police Jury made not only its share of PERS contributions for its employees, but also paid its employees’ shares of same. Thus, upon termination of his employment with the Police Jury, Cliburn was entitled to receive his “accumulated contributions” just as if he had made the contributions himself.
According to the record, Cliburn earned wages totaling $174,172.60 over the course of his employment with the Police Jury. Had Cliburn been enrolled in PERS as was Inrequired by statute, the Police Jury would have contributed, on his behalf, an amount equal to 9.5 percent of Cliburn’s salary, or $16,546.40. Once terminated from the Police Jury, Cliburn was only, entitled to receive his “accumulated contributions” in the amount of $16,546.40. Thus, the judgment of the trial court is amended to reflect a judgment in favor of Cliburn in the amount of $16,546.40, together with legal interest from the date of judicial demand.
In addition to awarding Cliburn an amount representative of the PERS benefits that he was entitled to as a result of his employment with the Police Jury, the trial court awarded interest at one and one-half percent per month pursuant to La. R.S. 11:2014(0 and attorney fees in the amount of $5,863.45 pursuant to La. R.S. 23:632. On appeal, the Police Jury assigned error to these awards. In answering the Police Jury’s appeal, Cliburn argued that the trial court should have awarded penalty wages and additional attorney fees for services performed in connection with the appeal. Cliburn also argues the interest should have been awarded at a date other than as specified in the judgment.
With regard to the interest awarded by the trial court, this award was based on La. R.S. 11:2014(0, which provides as follows:
Payments due under Subsection A, above, shall be considered delinquent when not received by the system within fifteen days after the close of each fiscal quarter as determined by the Board. Delinquent payments may, with interest at the rate of one and one-half percent per month compounded monthly, be recovered by action in a court of competent jurisdiction against the employer liable therefor or shall, upon due certification of delinquency and at the request of the board, be deducted from any other moneys payable to such employer by any department or agency of the state.
As correctly pointed out by the Police Jury in brief, La. R.S. 11:2014(0 “is a penal statute which allows the board to collect delinquent contributions to PERS.” The interest rate provided in La. R.S. 11:2014(0) is the rate charged employers on delinquent employee and employer contributions. This amount is payable only to PERS by a delinquent employer. It is not applicable in the instant case. The trial court erred in making such an award. Thus, that portion of the judgment awarding Cliburn “interest at the rate of one and one-half interest per month compounded monthly from fifteen days after the close of [12the fiscal quarter during which Mr. Cliburn’s employment was terminated, per La. R.S. 11:2014(C)” is reversed.
The issue of attorney fees and penalty wages is also easily disposed of in the instant case. As previously indicated, La. R.S. 23:631 and 23:632 are not applicable *907 in this case. Likewise, the provisions in La. R.S. 23:632 regarding penalty wages and attorney fees are inapplicable. It is well settled in Louisiana that an award of attorney fees is not allowed except where authorized by statute or contract. Rivet v. State, Department of Transportation and Development, 96-0145, p. 10 (La.9/5/96), 680 So.2d 1154, 1160. As there is nothing in either the applicable statutes or in the present contract regarding attorney fees, such an award is not warranted. Thus, the trial court’s judgment awarding attorney fees in the amount of $5,863.45 is reversed. Further, Cliburn’s argument that he is entitled to additional attorney fees and penalty wages is without merit.
PRESCRIPTION
When Cliburn filed his petition, the Police Jury raised the affirmative defense of prescription in its answer. Moreover, at the close of the evidence at trial, the Police Jury maintained that Cliburn’s claims were prescribed pursuant to La. Civ.Code art. 3494. While there was never a specific ruling on the prescription issue, it is apparent that the court overruled same in rendering judgment in Cliburn’s favor.
Louisiana Civil Code article 3494 provides, in pertinent part, that the following actions are subject to a liberative prescription of three years: “An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board.” Cliburn’s claim for what he alleges are past due wages falls within the purview of “compensation for services rendered.” As such, the three-year prescriptive period set forth above applies to this situation.
Having determined that the three-year prescriptive period of Article 3494 applies to this claim, we next address the more difficult question of when prescription on Cliburn’s action commenced to run. Pursuant to La. Civ.Code art. 3495, this three-year | ^prescriptive period “commences to run from the day payment is exigible.” Black’s Law Dictionary defines an “exigible” debt as a “liquidated and demandable or matured claim.” (6th ed. 1990). Further, Comment (b) to Article 3495 provides as follows:
On principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible. See 2 M. Planiol, Traité élémentaire de droit civil 3 Pt. 2, at 358 (Louisiana State Law Institute trans. 1959):
Liberative prescription begins to run as soon as the action accrues, or, as Pothier said “the day on which the creditor could institute his demand.” It cannot commence sooner, because the time given for prescription should be a time during which the action can be exercised, and one cannot reproach the creditor for not having acted at a time when he did not have the right to do so. Otherwise, it could happen that the right would be lost before it could be exercised, which would be as unjust as absurd (Cass.Civ., 11 Dec. 1918, D. 1923.1.96, P. and S. 1921.1.161).
Applying Article 3495 to the facts of this case, we find that Cliburn’s claim for payment of PERS benefits he was entitled to as a result of his employment with the Police Jury had not prescribed when he filed his suit in 1998. Prescription on this claim did not commence to run until refund of his “accumulated contributions” became exigible or when Cliburn could act on his claim for payment thereof. Pursuant to La. R.S. 11:1935, a participant in PERS who is not eligible to retire but ceases to be an employee is entitled to receive “the amount of his accumulated contributions upon demand.” However, such refunds are not required to be made until 30 days after the effective date of the participant’s termination, resignation, or death. La. R.S. 11:1935(D). Thus, the prescriptive period for Cliburn’s claim could not com- *908 menee any sooner than the time of his termination, or January 15, 1996, because he was not eligible to receive his “accumulated contributions” to PERS any sooner than 30 days after the effective date of his termination. Based on the above analysis, we conclude that Cliburn’s suit was timely filed. The Police Jury’s argument to the contrary is without merit.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is amended to reflect an award in Cliburn’s favor in the amount of $16,546.40, together with legal interest from the date of judicial demand. Further, that portion of the judgment awarding interest at a rate of one and one-half percent per month and attorney fees in the amount 114of $5,863.45 is reversed. Costs associated with this appeal are assessed against the Police Jury.
REVERSED IN PART; AMENDED, AND AS AMENDED, AFFIRMED.
GONZALES, J. concurs.

. There is some discrepancy regarding the hourly rate that Cliburn was paid when he was working for the Police Jury while still in law school. Although Cliburn testified that he was paid $35.00 per hour at that time, James Hays, Executive Director of the Police Jury, indicated that Cliburn was. initially paid $8.00 per hour, which was increased to $35.00 per hour when Cliburn returned to work for the Police Jury in August of 1993.

. The evidence at trial proved that, although Cliburn may have had some independence in his actual day-to-day activities, he was always subject to the control of the Police Jury as to what he would do each day. Further, there was no specific price for the overall undertaking. Cliburn’s verbal contract of employment provided for an hourly rate of $35.00 and had no specific term. Cliburn was simply paid $35.00 per hour based on whatever he was asked to do.

. As correctly cited by the parties to this case, La. R.S. 11:1946 provides for an employee contribution rate of 9.25 percent. We note, however, that while this statute became effective on June 25, 1991, the more recent statement by the legislature in this regard is found in 1995 La. Acts No. 1117, § 3, which amended La. R.S. 11:62 effective June 30, 1995, to provide for the 9.5 percent employee contribution rate for members of PERS Plan A. Section 3 of the Act states as follows: "The provisions of this Act increasing accrual rates shall only be effective for persons who are active members of the system on or after the effective date of this Act.” As Cliburn was employed by the Police Jury from August 1993 to January 1996, and thus, an active member of the system when this Act became effective, the 9.5 percent employee contribution rate applies herein.

. "Accumulated contributions” is defined in La. R.S. 11:1902(1) as "the sum of all amounts deducted from a member’s compensation and credited to his individual account in the annuity savings fund.”