# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2019 CA 0106

## FRANK VINE

## VERSUS

## TEACHERS RETIREMENT SYSTEM OF LOUISIANA

**Judgment Rendered:** DEC 1 9 2019

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. C607425

Honorable Todd Hernandez, Judge Presiding

* * * * * *

| | |
|---|---|
| Scott D. Wilson<br>John A. London, III<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Frank Vine |
| Matthew G. Tessier<br>Roy A. Mongrue, Jr.<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Teachers' Retirement System of<br>Louisiana |
| Mark D. Boyer<br>Scott Nettles<br>Denham Springs, Louisiana | Counsel for Defendant/Appellee<br>West Feliciana Parish School Board |
| Robert Hammonds<br>Wayne T. Stewart<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Pointe Coupee Parish School Board |

* * * * * *

BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.

**McCLENDON, J.**

Plaintiff herein, Frank Vine, appeals a judgment rendered in favor of Teachers' Retirement System of Louisiana, the West Feliciana Parish School Board, and the Pointe Coupee Parish School Board. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff herein, Frank Vine, was a Certified School Psychologist from 1983 through 2018. Mr. Vine was employed by various school systems in regular full-time positions for eleven years, from the summer of 1983 until the summer of 1994. During this time, Mr. Vine's employers remitted employee retirement withholdings and employer retirement contributions (collectively, "retirement contributions") to Teachers' Retirement System of Louisiana ("TRSL") on Mr. Vine's behalf. This full-time income was reported by IRS Form W-2.

In August of 1994, Mr. Vine resigned from his full-time position as a school psychologist with the West Feliciana Parish School Board ("WFPSB"). Following this resignation, Mr. Vine contracted with WFPSB, Pointe Coupee Parish School Board ("PCPSB"), and St. Helena Parish School Board ("SHPSB") to provide school counseling services on a part-time basis. During this time from August 1994 – August 2006, no retirement contributions were made to TRSL on Mr. Vine's behalf. Mr. Vine's part-time income was reported on IRS Form 1099 ("1099 earnings").

Mr. Vine became a full-time employee of PCPSB in August of 2006. Mr. Vine continued to work full-time for PCPSB until his retirement on January 22, 2014. PCPSB made appropriate retirement contributions to TRSL on Mr. Vine's behalf during this time.

In December of 2009, while still working full-time for PCPSB, Mr. Vine contacted TRSL to inquire about potentially purchasing additional years of "service credit" pursuant to LSA-R.S. 11:158. While speaking with Martha Rosa of TRSL, the conversation turned to whether WFPSB, PCPSB, and SHPSB should have remitted retirement contributions on Mr. Vine's behalf for his 1099 earnings when he worked part-time. On the advice of Ms. Rosa, Mr. Vine collected records relative to the part-time work in question.

2

Mr. Vine contacted Ms. Rosa again in March of 2010. Ms. Rosa directed him to Venetia Pitts (now Venetia Clark), who was then an Accounting Supervisor for TRSL. In a March 11, 2010 email to Ms. Pitts, Mr. Vine wrote that Ms. Rosa "had suggested that there was a possibility that the [p]arishes that I contracted [with] should have been paying retirement assessments on me, as I was a vested TRSL member by that time; however, she was not sure, and suggested I contact you." Ms. Pitts agreed to assist Mr. Vine in contacting WFPSB, PCPSB, and SHPSB regarding the issue. She contacted SHPSB first, on March 25, 2010. On October 22, 2010, Ms. Pitts confirmed to Mr. Vine that SHPSB had submitted retirement contributions for his 1099 earnings to his retirement account.

Mr. Vine contacted WFPSB in September of 2010. He spoke with Helen B. Davis, who was then Supervisor of Finance and Management for WFPSB, and Karen Raby, who was then payroll specialist for WFPSB. In a letter dated November 10, 2010, Ms. Davis reported that WFPSB had researched Mr. Vine's request "that monies [he] earned under contract with [WFPSB] be submitted to [TRSL] as covered employment."[1] Attached documents reflected that WFPSB had determined it should have made employer retirement contributions in the amount of $19,509.74 and should have withheld employee contributions in the amount of $10,333.80 for Mr. Vine's part-time work for WFPSB, for a total retirement contribution amount of $29,843.54. Ms. Davis requested that Mr. Vine submit his share of the contributions "due for the years of covered employment" to WFPSB, as Ms. Pitts had advised that WFPSB should collect Mr. Vine's contributions and submit them to TRSL together with WFPSB's contributions. Mr. Vine submitted his share of the retirement contributions to WFPSB as requested. In December of 2010, WFPSB deposited $29,843.54 with TRSL for Mr. Vine's 1099 earnings.

In December of 2010, Mr. Vine met with Linda D'Amico, then superintendent of PCPSB, and Bobbie Jarreau, then bookkeeper of PCPSB. PCPSB began looking into Mr. Vine's concerns.

---

[1] Ms. Davis also wrote that per Ms. Pitts, "wages do not have to be reported by [WFPSB] for any year in which [Mr. Vine] did not earn at least $15,000.00 where a 1099 was issued," so WFPSB would not submit contributions for fiscal years 1994/1995 and 1998/1999.

On January 3, 2011, Benjamin Foster, Accounting Manager of TRSL, informed Mr. Vine that TRSL was going to "reverse" the contribution payments that had been made by SHPSB and WFPSB. Following this conversation, Mr. Foster sent an email dated January 4, 2011 to Ms. Pitts and Dana Vicknair, Assistant Director of TRSL. In the email, Mr. Foster wrote:

> [TRSL] initially communicated to Mr. Vine back in March 2010 that his 1099 earnings were reportable... Later in 2010, however, [TRSL] became aware that earnings derived solely as an independent contractor were not reportable to TRSL. Based on this, [TRSL] informed Mr. Vine that his earnings were not TRSL eligible.
>
> [SHPSB] has reported their information to TRSL for Mr. Vine, [WFPSB] just reported and their data is being processed by Cost, and [PCPSB] has not reported but has indicated to us today that they would report if required to do so.

On December 7, 2011, Mr. Vine instituted this lawsuit. On May 14, 2015, the trial court denied a motion for summary judgment filed by WFPSB. On November 19, 2015, the trial court denied Mr. Vine's motion for partial summary judgment as to the proper interpretation of Louisiana Administrative Code, Title 58, Part III, Chapter 2, § 201. On August 23, 2106, the trial court denied TRSL's exception of no cause of action, and also denied exceptions of prescription filed by TRSL, WFPSB, and PCPSB.

A bench trial on the merits was held on April 3 and April 4, 2018. Rather than hearing oral arguments, the trial court requested post-trial memorandums or arguments. On June 28, 2018, the trial court issued written reasons for judgment, rendering judgment in favor of TRSL, WFPSB, and PCPSB, which provide in pertinent part:

> At trial, the plaintiff had the burden of proving by a preponderance of the evidence that at all times for which he claims the defendants were obligated to make contributions to his retirement that he was an employee of either a city or parish school board pursuant to the provisions of LSA-R.S. 11:701 et seq. After considering the totality of evidence submitted at trial, the court concludes that the plaintiff failed to meet his burden of proof on this essential element of his claim and for that reason, the court orders that a Judgment issue herein in favor of the defendants and against plaintiff.

A final judgment dismissing all of Mr. Vine's claims against TRSL and WFPSB was executed on August 16, 2018. From this judgment, Mr. Vine appeals, raising the following assignments of error:

4

1. The trial court erred in failing to grant Mr. Vine's motion for partial summary judgment as to the defendants' liability and in failing properly to interpret the applicable law, the Louisiana Administrative Code, Title 58, Part III, Chapter 2, § 201, which required defendants to make retirement contributions on Mr. Vine's behalf even when he was a "nonemployee contractor." Specifically, the trial court erred in interpreting the law to require Mr. Vine to prove he was an employee of either a city or parish school board pursuant to the provisions of LSA-R.S. 11:701, *et seq.*, in order for the defendants to be obligated to make contributions to his retirement.

2. Alternatively, the trial court erred in deciding that Mr. Vine failed to establish that he was an employee pursuant to LSA-R.S. 11:701, *et seq.*, or was not otherwise a member of TRSL and entitled to contributions in light of LSA-R.S. 11:162, TRSL Louisiana Teacher Retirement Handbooks, and the **Fishbein v. State ex rel. Louisiana State Univ. Health Scis. Ctr.**, 2004-2482 (La. 4/12/05), 898 So.2d 1260, 1262, decision, and all the relevant law regarding independent contractor versus employee status.

## FIRST ASSIGNMENT OF ERROR

### Standard of Review

Mr. Vine alleges that the trial court erred in denying his motion for partial summary judgment regarding the interpretation of Section 201. Appellate courts review summary judgments *de novo*. **Louisiana Horsemen's Benev. & Protective Ass'n 1993, Inc. v. Fair Grounds Corp.**, 2002-1928 (La. 4/9/03), 845 So.2d 1039, 1041. Mr. Vine also asserts that the trial court erred by interpreting LSA-R.S. 11:701 to require WFPSB and PCPSB to make retirement contributions on Mr. Vine's 1099 earnings only if Mr. Vine was an employee. Appellate courts review questions of law which involve statutory interpretation *de novo*. **Tanana v. Tanana**, 2012-1013 (La.App. 1 Cir. 5/31/13), 140 So.3d 738, 742. Accordingly, this Court's review of this assignment of error is *de novo*. See **Billeaudeau v. Opelousas Gen. Hosp. Auth.**, 2016-0846 (La. 10/19/16), 218 So.3d 513, 520.

### Applicable Law

Louisiana Administrative Code Title 58, Part III, Chapter 2, § 201, entitled "Earnable Compensation Accounts" ("Section 201"), provides:

A. Earnable compensation shall not include compensation paid to an active member or to an inactive member of Teachers' Retirement System of Louisiana (TRSL) if the compensation is paid by a secondary employer and is reported to the Internal Revenue Service (IRS) on a Form 1099, but only if both the following occur.

5

1. The individual contract is for $1,000 or less, and a Form 1099 is issued.

2. The cumulative amount of the Form 1099 payments issued by a single secondary employer to that member does not exceed $15,000 in a fiscal year.

B. If an individual contract is for more than $1,000, then that entire payment is earnable compensation subject to TRSL employer and employee contributions.

C. If the cumulative amount of the Form 1099 payments issued by a single secondary employer to that member exceeds $15,000 in a fiscal year, then all Form 1099 payments in excess of $15,000 in that TRSL fiscal year are earnable compensation subject to TRSL employer and employee contributions.

NOTE: A secondary employer is one who does not report W-2 earnings on this member.

D. Earnable compensation shall include any and all compensation paid to a retiree of this system by a TRSL-covered employer regardless of IRS reporting.

AUTHORITY NOTE: Promulgated in accordance with R.S. 11:701(10).

HISTORICAL NOTE: Promulgated by the Department of Treasury, Board of Trustees of the Teachers' Retirement System of Louisiana, LR 30:273 (February 2004).

Louisiana Revised Statute 11:701(10) defines "earnable compensation," and

provides as follows:

"Earnable compensation" means the compensation earned by a member during the full normal working time as a teacher. Earnable compensation shall include any differential wage payment as defined by 26 U.S.C. 3401(h)(2) that is made by an employer to any individual performing qualified military service. Earnable compensation shall not include per diem, post allowances, payment in kind, hazardous duty pay, or any other allowance for expense authorized and incurred as an incident to employment, nor payments in lieu of unused sick or annual leave, nor retroactive salary increases unless such an increase was granted by legislative Act or by a city or parish systemwide salary increase, nor payment for discontinuation of contractual services, unless the payment is made on a monthly basis. If a member is granted an official leave and he makes contributions for the period of leave, earnable compensation shall not include compensation paid for other employment which would not have been possible without the leave. The board of trustees shall determine whether or not any other payments are to be classified as earnable compensation.

Louisiana Revised Statute 11:701(17) defines "member" as follows:

"Member" means any teacher included in the membership of the system as provided in Part II of this Chapter.

Louisiana Revised Statute 11:701(33)(a)(i) defines "teacher," in pertinent part,

as follows:

6

(a) "Teacher", except as provided in Subparagraph (b) of this Paragraph, shall mean any of the following:

(i) Any employee of a city, parish, or other local school board, any parish, city, or other local superintendent, or any assistant superintendent of public schools.

Louisiana Revised Statute 11:701(11) defines "employer" as follows:

"Employer" means the state of Louisiana, any city, parish, or other local school board, the State Board of Elementary and Secondary Education, any board created by Article VIII of the Constitution of Louisiana, or any other agency of and within the state or a political subdivision by which a teacher is paid.

## Statutory Interpretation

Interpretation of any statute begins with the language of the statute itself. **David v. Our Lady of the Lake Hosp., Inc.**, 2002-2675 (La. 7/2/03), 849 So. 2d 38, 46. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13. "All laws pertaining to the same subject matter must be interpreted *in pari materia* ...." **Acurio v. Acurio**, 2016-1395 (La. 5/3/17), 224 So.3d 935, 938. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the Legislature's intent. LSA-C.C. art. 9; LSA-R.S. 1:4. In the event the language of a statute is susceptible of different meanings, the interpretation must best conform to the purpose of the law. LSA-C.C. art. 10.

## Discussion

Mr. Vine contends that before Section 201 was enacted in 2004, LSA-R.S. 11:701, *et seq.*, required WFPSB and PCPSB to make retirement contributions on his 1099 earnings for 1994 to 2006. Mr. Vine argues that the definition of "earnable compensation" set forth in LSA-R.S. 11:701(10) explicitly excludes "payment for discontinuation of contractual services," but does not explicitly exclude "contractual payments," and therefore contractual payments are included in earnable compensation.[2] Thus, he maintains that his 1099 earnings, as payments made pursuant to contracts, are "earnable compensation" on which retirement contributions were due.

---

[2] In support of this point, Mr. Vine relies on **Fishbein v. State ex rel. Louisiana State Univ. Health Scis. Ctr.**, 2004-2482 (La. 4/12/05), 898 So.2d 1260, 1272. In **Fishbein**, the Louisiana Supreme Court wrote:

Mr. Vine further argues that after the enactment of Section 201 in 2004, WFPSB and PCPSB were mandated to make retirement contributions on his 1099 earnings in accordance with the earnable compensation formula contained in Section 201. Mr. Vine asserts that the note in Section 201 identifying a "secondary employer" as "one who does not report W-2 earnings on [the TRSL member]" effectively categorizes all employer entities who do not report W-2 earnings on a TRSL member as secondary employers. Mr. Vine then asserts that because there is no reference to or definition of the term "primary employer" in Section 201, there is no requirement that a primary employer exist in order for there to be a secondary employer. Mr. Vine thus relies on the "secondary employer" note in Section 201 to support his claim that he was a member of TRSL during the relevant time period by asserting that Section 201 extends the definition of "members" to include workers who have only independent contractor relationships with the employer entities.[3] In sum, Mr. Vine claims that he was a "member" of TRSL, that his 1099 earnings were "earnable compensation," and that

---

The second sentence of La. R.S. 11:701(10) that excludes several different types of pay from the definition of earnable compensation does not explicitly exclude supplemental salary. Further, like the court of appeal, we find it is not sufficiently analogous to any of the items of pay expressly excluded from the definition to warrant its exclusion....There is no evidence that the legislature intended to exclude supplemental salary from the definition. In fact ... the legislature's failure to exclude supplemental salary from the definition supports our conclusion that it is included as part of plaintiff's earnable compensation.

TRSL argues that **Fishbein** addresses whether the supplemental salary paid to the plaintiff, who was unquestionably an employee, was earnable compensation. Thus, TRSL contends that **Fishbein** is distinguishable and inapplicable to the instant matter. We agree.

[3] Mr. Vine contends that TRSL's "Audit Alert" Publication, No. 1-04, corroborates this position. The Audit Alert provides:

In the past, whenever a TRSL member worked for any TRSL contributing agency, no matter how he/she was paid, that stipend/salary amount should have been reported to TRSL as earnable compensation, and employer and employee retirement contributions had to be remitted.

On February 2, 2004, the TRSL Board of Trustees approved a new rule, worked out between TRSL and agency business managers, which sets a minimum level of compensation that must be paid to a TRSL member who is a nonemployee contractor before the payment must be reported to TRSL.

Basically, if the payment is $1,000 or less and a Form 1099 is issued, and the total "1099" payments to that individual for that fiscal year are less than $15,000, then there is no reporting/contribution requirement to TRSL.

Mr. Vine argues that the Audit Alert references a "nonemployee contractor," evidencing that TRSL recognized such a status. In response, TRSL argues that the Audit Alert frames this discussion with a reference to TRSL members, who are necessarily employees.

The interpretation of a law involves, primarily, the search for the legislature's intent. **Certified Capital Corp. v. Reis**, 2003-2525 (La.App. 1 Cir. 10/29/04), 897 So.2d 128, 130, writ denied, 2004-2876 (La. 1/28/05), 893 So.2d 79. TRSL's publication of the Audit Alert is not an expression of the legislature's intent and therefore, is not properly considered in our search for same.

WFPSB and PCPSB were his "secondary employers," entitling him to retirement contributions on his 1099 earnings.

In opposition, TRSL, WFPSB, and PCPSB (collectively, "Defendants") maintain that the trial court correctly determined that under the governing statute, WFPSB and PCPSB were not required to remit retirement benefits for Mr. Vine's 1099 earnings unless Mr. Vine was an employee of either a city, parish, or local school board at the time.[4] In making this argument, Defendants point out that Section 201 was promulgated in accordance with LSA-R.S. 11:701(10). Defendants reason that "[e]arnable compensation," as defined in LSA-R.S. 11:701(10), is "compensation earned by a member during the full normal working time as a teacher." Louisiana Revised Statute 11:701(17) defines a "member" as "any teacher included in the membership of the system as provided in Part II of this Chapter." Louisiana Revised Statute 11:701(33)(a)(i) then defines a "teacher," in pertinent part, as "[a]ny employee of a city, parish, or other local school board, any parish, city, or other local superintendent, or any assistant superintendent of public schools." Thus, Defendants argue that the language of LSA-R.S. 11:701, *et seq.*, clearly establishes that "earnable compensation" does not include compensation paid to non-employees. Therefore, Defendants maintain that Mr. Vine was not entitled to retirement contributions on his 1099 earnings prior to the enactment of Section 201 in 2004.

Defendants further assert that Mr. Vine was not entitled to retirement contributions on his 1099 earnings after Section 201 was enacted in 2004. With respect to the note in Section 201 stating that a secondary employer "is one who does not report W-2 earnings on this member," PCPSB argues that the term "secondary employer" necessarily implies that there is a "primary employer" that does issue a W-2. Defendants therefore contend that because Mr. Vine was not an employee of any city or parish school board at the time when the 1099 earnings were received, Mr. Vine's 1099 earnings were not "earnable compensation" on which retirement benefits must be paid.

---

[4] Defendants' arguments were consistent. Therefore, for the sake of brevity, we discuss Defendants' arguments on this issue collectively.

We agree. Louisiana Civil Code article 13 provides that laws on the same subject matter must be interpreted in reference to each other. "All laws pertaining to the same subject matter must be interpreted *in pari materia* ...." **Acurio**, 224 So.3d at 938. Louisiana Revised Statutes 11:701(10) defines earnable compensation in terms of compensation earned by members, while working as teachers. In the portion of LSA-R.S. 11:701(33) applicable to Mr. Vine, a teacher is defined as an employee of a city, parish, or local school board. The language of LSA-R.S. 11:701 is clear and does not lead to absurd consequences, and therefore, must be applied as written. LSA-C.C. art. 9; LSA-R.S. 1:4. Further, the "secondary employer" language in Section 201 is a note, not a provision of Section 201, and must be read in the context of the language preceding it which refers to payments made to a member of TRSL. Again, a member is necessarily an employee. The language of Section 201 is therefore clearly in accord with that of LSA-R.S. 11:701, and does not conflict with or affect the interpretation of LSA-R.S. 11:701.[5] Thus, we conclude that the trial court correctly interpreted LSA-R.S. 11:701, *et seq.*, to require Mr. Vine to be an employee of WFPSB, PCPSB, or another city, parish, or local school board, in order to be entitled to retirement contributions for the 1099 earnings he received for part-time work. This assignment of error is without merit.

## SECOND ASSIGNMENT OF ERROR

### Standard of Review

Mr. Vine argues that in the event this Court finds no merit in his first assignment of error, the trial court erred in finding that Mr. Vine did not prove that he was an employee of a city, parish, or local school board, or otherwise a member of TRSL entitled to retirement contributions on his 1099 earnings for 1994 to 2006. The trial

---

[5] With respect to Mr. Vine's arguments that Section 201, not LSA-R.S. 11:701, is the controlling and operative statute, we note that Section 201 is a provision of the Administrative Code, promulgated by the Board of Trustees of TRSL, in accordance with LSA-R.S 11:701(10). Louisiana Revised Statute 11:701(10) is a revised statute enacted by the legislature. It is well established that the Legislature may confer upon administrative officers in the executive branch the power to prescribe administrative rules and regulations, but "*the regulations promulgated by the agency may not exceed the authorization delegated by the Legislature.*" **Arrant v. Wayne Acree PLS, Inc.**, 2015-0905 (La. 1/27/16), 187 So.3d 417, 421, quoting **State v. Alfonso**, 99-1546 (La. 11/23/99), 753 So.2d 156, 162. Thus, although the last sentence of LSA-R.S. 11:701(10) authorizes the Board of Trustees of TRSL to determine whether any other payments are earnable compensation, Section 201 necessarily operates in relation to and subject to LSA-R.S. 11:701(10).

court's determination was based on factual findings, which are subject to the manifest error standard of review. **Chauvin v. Chauvin**, 2010-1055 (La.App. 1 Cir. 10/29/10), 49 So.3d 565, 569.[6] An appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989).

## Applicable Law

To determine whether the employee is an independent contractor or a mere servant, the control exercised by the employer over the employee must be examined. **Hickman v. Southern Pacific Transport Co.**, 262 So.2d 385, 391 (1972). The **Hickman** court explained:

> It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

262 So.2d at 390-91. It is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists. **Hickman**, 262 So.2d at 391.

> This Court has stated:

> In **Hickman**, the Louisiana Supreme Court found the following factors relevant in determining whether the relationship of principal and independent contractor exists: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall

---

[6] A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. **Chauvin v. Chauvin**, 2010-1055 (La.App. 1 Cir. 10/29/10), 49 So.3d 565, 569. Where one or more legal errors by the trial court interdict the fact-finding process, the manifest-error standard is no longer applicable. *Id.* Having found that the trial court correctly interpreted and applied the governing statutes, we have simultaneously determined that the trial court did not commit legal error. Thus, the manifest error standard of review is applicable to this assignment of error.

undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

**Cliburn v. Police Jury Ass'n of Louisiana, Inc.**, 1999-2191 (La.App. 1 Cir. 11/3/00), 770 So.2d 899, 903.

## Discussion

As noted above, this assignment of error challenges the trial court's factual determination that Mr. Vine was not an employee of WFPSB and PCPSB during the relevant time period, and is therefore subject to the manifest error standard of review. Under the manifest error standard of review, a reviewing court may not merely decide if it would have found the facts of the case differently. **Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC**, 14–2592 (La. 12/8/15), 193 So.3d 1110, 1115. Rather, to reverse a trial court's factual conclusion, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. **Stobart v. State through Dep't of Transportation and Dev.**, 617 So.2d 880, 882 (La. 1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court feels that its own evaluations and inferences are as reasonable. **Hayes,** 193 So.3d at 1116.

At trial, Mr. Vine stipulated that he contracted with WFPSB, PCPSB, and SHPSB for twelve years. Mr. Vine testified that WFPSB paid Mr. Vine hourly for his work, and PCPSB paid Mr. Vine on a fee-based schedule. Mr. Vine also testified that he had begun part-time work because he wanted greater flexibility and greater autonomy.

Several documents were introduced into evidence that reflected that Mr. Vine had considered himself an independent contractor at the time he received the 1099 earnings at issue. In an August 10, 1995 resignation letter to WFPSB that was introduced into evidence, Mr. Vine wrote, "this decision is based upon my personal goal to offer my services in the capacity of a self-employed consultant to public and private schools." On an "Application for Certified Employment" Mr. Vine submitted to PCPSB, dated August 3, 2006, Mr. Vine wrote, "I have [twenty-three] years of total experience

in the public schools of Louisiana, with full-time and/or contract employment in seven parishes... I have been working in Pt. Coupee for 12 years, on a contract basis as a school psychologist."

During Mr. Vine's testimony at trial, the following exchange occurred:

Q. So, you indicated you submitted an invoice and it was paid in full, so you were - - were you aware that there were no taxes or any other amount, including retirement, taken from the amount that [PCPSB] paid you each month you submitted an invoice?

A. Yes.

Mr. Vine testified that his work was administratively, but not professionally, supervised prior to August 2006. Mr. Vine was told which students to assess or counsel. Mr. Vine had to coordinate his work with other school personnel, and was expected to attend certain meetings. Mr. Vine had freedom to set the days of the week he would work. He was expected to maintain that schedule once set. R. 467. Mr. Vine worked on school grounds, and the tools he used were the school's assets. Mr. Vine provided written reports in requested formats. When questioned as to whether he was told how to perform his work, he stated:

As far as how to do things, of course, as far as assessments, I had to comply with all the Department of Ed regulations, and I also had to comply with the wishes of my pupil appraisal co-workers, the supervisor of special ed, and to some extent the school personnel in that when things got done, what was the priority, what have you, was kind of a malleable moving target sort of thing.

\*\*\*

In general, the parameters were, I knew how to do counseling; however, I was told specifics, such as I could not broach subjects such as contraception or abortion with any students at the time.

I was also told that I had to maintain a set of records at the Family Service Center which violated counseling ethics as best I understood them, but they indicated that was mandatory, so I made additional copies and did that.

During this time period, Mr. Vine filed Schedule C: Profit or Loss from Business, and Schedule SE, Self-Employment Tax, with his tax returns.

In a letter dated December 12, 2013, regarding Mr. Vine's application for retirement benefits, TRSL stated that Mr. Vine's file "indicate[d] you became divorced or legally separated while a member of TRSL." As Mr. Vine was divorced in 2001, while working part-time, Mr. Vine argues that this letter represents an admission on the part of TRSL that Mr. Vine was a member of TRSL at that time.

13

Following trial on the merits in which all of the above evidence was considered, the trial court found that Mr. Vine failed to meet his burden of proof by a preponderance of the evidence. Having thoroughly reviewed the record in its entirety, and bearing in mind our standard of review, we affirm the trial court's factual findings. See **Guillory v. Lee**, 2009-0075 (La. 6/26/09), 16 So.3d 1104, 1117 ("[O]n review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently."). In light of the facts as testified to by Mr. Vine and the evidence presented, we are unable to conclude that the trial court lacked any reasonable basis for its decision that Mr. Vine did not prove he was an employee under the jurisprudential factors set forth in **Hickman** and **Cliburn**. Accordingly, this assignment of error is without merit.

We note Mr. Vine's argument that because he had earned ten years of creditable service in TRSL as an employee prior to the period he worked part-time for WFPSB and PCPSB, he was a member of TRSL pursuant to LSA-R.S. 11:162(C)(1). Louisiana Revised Statute 11:162(C)(1) requires membership for "a part-time, seasonal, or temporary employee as defined in 26 CFR 31:3121(b)(7)-2, or in any successor regulation, who on July 1, 1991, or thereafter, has or earns ten or more years of creditable service in his current system."[7,8] As we have found that the trial court did not

---

[7] While 26 CFR 31:3121(b)(7)-2 sets forth definitions for part-time, seasonal, and temporary employees, the term "employee" as used therein is defined in 26 CFR 31:3121(d)-1 by reference to common law rules, which essentially consider the same factors as set forth in **Hickman**. Title 26, Chapter 1, Subchapter C, Part 31, Subpart D-1, provides in pertinent part:

> (c) Common law employees. (1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

> (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.

commit manifest error in its determination that Mr. Vine failed to prove he was an employee of WFPSB and PCPSB at all pertinent times, and LSA-R.S. 11:162(C)(1) applies to employees, we find no merit in this argument.

## PRESCRIPTION

TRSL, WFPSB, and PCPSB argue that the trial court erred in denying their exceptions of prescription. As we are maintaining the judgment on the merits, we pretermit discussion of this issue.

## CONCLUSION

For the above and foregoing reasons, the August 16, 2018 judgment of the trial court is affirmed. Costs of this appeal are assessed to Mr. Vine.

**AFFIRMED.**

---

(3) Whether the relationship of employer and employee exists under the usual common law rules will in doubtful cases be determined upon an examination of the particular facts of each case.

[8] Mr. Vine relies on the "Louisiana Teacher Retirement Handbook" ("Handbook") published by TRSL for 1994 through 2005, in further support of this argument. The Handbook consistently included a section on what Mr. Vine refers to as the "10 year rule," stating that a "person" with 10 or more years of TRSL service credit, doing substitute or part-time work, may or must remain a member of TRSL, and then must pay contributions to TRSL. Mr. Vine argues that the use of "person" rather than "employee" in the Handbook reflects that the trial court erred in finding that Mr. Vine had to be an employee to be a member of TRSL. As with the Audit Alert, however, TRSL's publication of the Louisiana Teacher Retirement Handbook is not an expression of the legislature's intent. Therefore, we do not consider it in our analysis of this issue.