McClendon, j.
|2In this custody proceeding, a father appeals a judgment granting the domiciliary custody of the minor child to the mother. For the following reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Meredith Bourg and Todd David Chau-vin were married on May 22, 2004, and their son, Logan, was born on September 2, 2005. Petitions for divorce were filed by both parties in April of 2008, and the matters were consolidated on May 6, 2008. On September 26, 2008, the trial court signed a judgment of divorce, as well as a judgment based on the consent of the parties regarding child custody and other incidental matters. Among the stipulations in the custody judgment was one that the parties would have shared joint custody on a rotating week-to-week basis to coincide with Mr. Chauvin’s employment. Also by consent judgment, signed on March 26, 2009, Mr. Chauvin was granted the exclusive use and possession of the former matrimonial domicile in Bourg, Louisiana.
Thereafter, on June 8, 2009, upon obtaining information that Ms. Bourg had enrolled Logan in two other elementary schools, Mr. Chauvin filed a rule requesting that Logan be enrolled at Bourg Elementary School. Opposing rules for modification of custody followed shortly thereafter. Trial on the three rules was held on August 11, 2009. At the start of the trial, the court advised the parties that each side would have two hours to present their case. At the conclusion of trial, the matter was taken under advisement. Judgment was signed on January 15, 2010, granting the parties the joint, care, custody, and control of their minor child, with Ms. Bourg being designated as the custodial domiciliary parent, subject to the visitation rights of Mr. Chau-vin as established in the Joint Custody Implementation Plan.
|sMr. Chauvin appealed.[1] In his appeal, Mr. Chauvin alleges that the trial court erred in limiting him to two hours to pres-. *569 ent his case on his two rales and to defend against Ms. Bourg’s rale. He also assigned as error the grant of domiciliary custody to Ms. Bourg, because the court made no determination that Ms. Bourg met her burden of proving that there had been a change in circumstances, and because the court did not balance the factors for awarding custody as required by the Civil Code.
DISCUSSION
The best interest of the child is the guiding principle in all custody litigation. LSA-C.C. arts. 131 and 134. Keeping in mind that every child custody case must be viewed in light of its own particular set of facts, the jurisprudence recognizes that the trial court is generally deemed to be in the best position to ascertain the best interest of the child given each unique set of circumstances and because of its superior opportunity to observe the parties and the witnesses who testified at the trial. Babin v. Babin, 02-0396, p. 7 (La.App. 1 Cir. 7/30/03), 854 So.2d 403, 408, writ denied, 03-2460 (La.9/24/03), 854 So.2d 338, cert. denied, 540 U.S. 1182, 124 S.Ct. 1421, 158 L.Ed.2d 86 (2004); State in the Interest of AR, 99-0813, p. 8 (La.App. 1 Cir. 9/24/99), 754 So.2d 1073, 1078. Accordingly, the trial court is vested with a vast amount of discretion in child custody cases, and its determination of custody is entitled to great weight, which will not be reversed on appeal unless an abuse of discretion is clearly shown. Elliott v. Elliott, 05-0181, p. 7 (La.App. 1 Cir. 5/11/05), 916 So.2d 221, 226, writ denied, 05-1547 (La.7/12/05), 905 So.2d 293; State in the Interest of AR, 99-0813 at p. 8, 754 So.2d at 1077-78.
In this case, as in most custody cases, the trial court’s determination was based on factual findings, which are sub-ject to the manifest error standard of review. Specifically, an appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 844. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and- (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Thus, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Id. at 883.
However, where one or more legal errors by the trial court interdict the fact-finding process, the manifest-error standard is no longer applicable. Evans v. Lungrin, 97-0541, p. 6 (La.2/6/98), 708 So.2d 731, 735. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Pruitt v. Brinker, Inc., 04-0152, p. 4 (La.App. 1 Cir. 2/11/05), 899 So.2d 46, 49, writ denied, 05-1261 (La.12/12/05), 917 So.2d 1084.
In his first assignment of error, Mr. Chauvin argues that he had no knowledge that there would be a limitation im *570 posed upon the presentation of evidence. He asserts that by giving him only two hours to present evidence on |fitwo rules and defend a third, his rights to due process were violated under the Louisiana Constitution.[2]
A court has the power to control its proceedings pursuant to LSA-C.C.P. art. 1681 A, which provides:
The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
The court’s power under LSA-C.C.P. art. 1631 to control trial proceedings is limited by the phrase “so that justice is done.” Further, the due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution guarantees litigants a right to a fair hearing. However, “due process” does not mean litigants are entitled to an unlimited amount of the court’s time. Goodwin v. Goodwin, 618 So.2d 579, 588 (La.App. 2 Cir.), writ denied, 623 So.2d 1340 (La.1993).
The court in Goodwin adopted the five following non-exclusive factors that should be considered in determining whether the trial court denied a party its due process rights and exceeded the authority granted by statute: (1) before imposing time limitations in a case, the trial judge should be thoroughly familiar, through pretrial proceedings, with the claims of the parties, the proposed testimony and number of witnesses, and the documentary evidence to be presented; (2) if they are used, time limits should be imposed on all parties, before any party presents any evidence, and sufficiently in advance of trial for the litigants to prepare for trial within the limits imposed; (3) the trial judge should inform the parties before the trial begins that reasonable extensions of the time limits will be granted for good cause shown; (4) the trial judge should develop an equitable method of charging time against each litigant’s time limits; and (5) the trial judge should put all of his rulings regarding time limits and the ^reasons for the rulings on the record. Id. at 583-84.[3] Mr. Chauvin argues that because none of the Goodwin guidelines were followed, the trial court committed legal error.
In this matter, at the beginning of trial, the following conversation took place:
The Court: Okay. Let me ask you this, Ms. Smitko, about how many witnesses do you have? And I’m going to ask you the same thing, Mr. Spence. Including your client. And not counting the other side....
Ms. Smitko: Not counting the other side?
The Court: Right. And Mr. Spence, count your client and your witnesses, so I can give ya’ll the game plan here.
Ms Smitko: Possibly eight that I intend calling, but they may be aligned with the other side, but I do have to call them in my case in chief.
*571 The Court: All right.
Mr. Spence: If you like, I’ll call out the names of my witnesses because I’m going to ask for a sequestration order, but I have five.
[[Image here]]
The Court: Okay. This is the deal, each side is going to be given two hours to put on testimony, including cross-examination. Each side has two hours. Does not count argument, does not count recesses, doesn’t count calling your witnesses. It counts from the time you start questioning. So each side has two hours. I’ll be the timekeeper. Okay. So that means get to the point.
Ms. Smitko: Just a quick question, Judge.
The Court: Sure.
Ms. Smitko: Like if I spend 15 minutes on a witness and he cross-examines for 45 minutes does that—
The Court: That’s his 45.
Ms. Smitko: Oh, okay.
The Court: That’s his 45 minutes.
Ms. Smitko: Just make sure that doesn’t come on mine.
|7The Court: That’s his 45 minutes. Okay?
Mr. Spence: Don’t have to worry about that.
The Court: I’ve done this before. It works. It makes the lawyers get to the point. Two hours is a lot of time. It’s going to take probably— to do four hours it’s probably going to take eight hour[s] to do a four hour, two hours each. Trust me.
Ms. Smitko: Yes, sir.
The Court: Well, maybe not eight hours but six I’m sure, okay. Ms. Smitko, please call your first witness.
Initially, we note that Mr. Chau-vin is basically arguing a denial of due process due to his inability to fully present his evidence. However, Mr. Chauvin did not object to the trial court’s allocation of time. To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. See Etcher v. Neumann, 00-2282, p. 13 (La.App. 1 Cir. 12/28/01), 806 So.2d 826, 838, writ denied, 02-0905 (La.5/31/02), 817 So.2d 105. Further, Mr. Chauvin did not ask for more time at the conclusion of the presentation of his case. Nor did he ask to proffer the testimony of any witness who was not called. See McLean v. Hunter, 495 So.2d 1298, 1305 (La.1986). Had a timely proffer been made, this court could then determine whether or not the evidence sought to be introduced was such that prejudice occurred by its exclusion. Goodwin, 618 So.2d at 584. Moreover, nowhere in his appellate brief does Mr. Chauvin allege any prejudice. He makes no contention that he was unable to present all the evidence he wanted to present. Mr. Chauvin simply states that the guidelines were not followed thereby amounting to legal error. Thus, even if the Goodwin guidelines were not completely followed, we are constrained to conclude that Mr. Chauvin’s assignment of error regarding a violation of his due process rights is without merit. See Smith v. Smith, 44,663, 44,664, pp. 30-32 (La.App. 2 Cir. 8/19/09), 16 So.3d 643, 660-61; Goodwin, 618 So.2d at 584-85.[4]
*572 Mr. Chauvin next argues that the trial court committed legal error in awarding domiciliary custody to Ms. Bourg. He contends that she failed to meet her burden of proof in showing that there had been a change in circumstances and that the trial court did not balance the factors for awarding custody as required by LSA-C.C. art. 134.
There is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and that needed to change a custody plan ordered pursuant to a non-considered decree (or stipulated judgment). Richard v. Richard, 09-0299, p. 6 (La.App. 1 Cir. 6/12/09), 20 So.3d 1061, 1066. If a prior award of custody, as in this case, has been made by consent decree, the party seeking a change in custody must prove that a change materially affecting the welfare of the child has occurred since the original decree. The proponent for change must also show that the proposed modification of custody is in the best interest of the child. Richard, 09-0299 at pp. 6-7, 20 So.3d at 1066.
The evidence presented to the trial court shows that the parties split in April of 2008 because of an affair by Ms. Bourg. The parties agreed to an alternating seven-day custody arrangement, because of Mr. Chauvin’s offshore employment. Ms. Bourg is employed as a mammography technician in Houma. After Ms. Bourg moved out of the matrimonial domicile, she rented a two-bedroom apartment pending the settlement of the community property. Ms. Bourg has another son from another relationship, who was eleven years old at the time of trial and is autistic. He also lives with his mother on a week on, week off basis. Additionally, Mrs. Bourg’s mother lives with her during the week and |flhelps Ms. Bourg financially. Ms. Bourg’s mother and her other son share one bedroom, and Ms. Bourg and Logan share the other bedroom.
Ms. Bourg testified that her boyfriend, James Hyatt, spends the night on occasion. Ms. Bourg also testified that Mr. Chauvin drinks heavily and curses in front of the children. She stated that after Logan spends a week with his father, it takes the first three days to calm him and get him back into his routine. Ms. Bourg testified that it was in Logan’s best interest that she be granted domiciliary custody. She stated that she has always been the caregiver for Logan, getting him up and dressed and to school. She does his homework with him and takes him to the doctor. Additionally, she stated that she could respond to an emergency situation in five minutes, whereas, because of Mr. Chau-vin’s current employment, he was at least fifty minutes away.
To the contrary, Mr. Chauvin testified that he believed it was in Logan’s best interest that he be named the domiciliary parent and that Logan attend Bourg Elementary. Mr. Chauvin was living with his girlfriend in the former family home, which is the only home Logan had lived in until the parties split. Mr. Chauvin testified that he was no longer working offshore, but recently began working in Harvey. He stated that he was home every evening. Mr. Chauvin testified that when he was working seven and seven, Logan stayed with him when he was inshore and not in daycare. He did not like the daycare, believing that there were too many children and not enough supervision. He also stated that Logan was picking up bad habits at the daycare, including bad language, and the bad language was not from him. Mr. Chauvin testified that he drinks, but that he does not have a drinking prob *573 lem. He also stated that he believed he could provide a more stable life for Logan than if Logan were with his mother, and he did not believe that Logan was safe with her.
On cross-examination, Mr. Chauvin testified that he leaves for work between 4:30 and 5:30 a.m. On the mornings that he has Logan, his girlfriend takes Logan to his mother’s house. Mr. Chauvin stated that he gets off work between four and five in the afternoon and that it takes about an hour, with |intraffic, to get home. Mr. Chauvin admitted that he is gone from the house from about 4:30 a.m. until six or six thirty in the evening. He did state, however, that his office has plans to move to Houma.
Ms. Bourg’s mother testified that her daughter and Mr. Hyatt have a good relationship. She notices a change in Logan’s behavior when he returns from his father’s house. Logan is very clingy with his mother, but it gets better as the week progresses. During their marriage, Mr. Chauvin was verbally abusive to her daughter and he drank excessively. She stated that Mr. Chauvin curses, but admitted that she had no knowledge of such language being used in front of the children.
Mr. Hyatt testified that he sleeps over at Ms. Bourg’s five to six nights a week. He stated that there is no sex when the children are around. He believes that Ms. Bourg is a good mother. He notices that when Logan returns from his father’s house, he uses profanity for the first two to three days.
Stephanie Martin also testified. She has been Logan’s babysitter since he was about eight months old. Ms. Martin testified that she used to watch Logan every day, including those days when Mr. Chau-vin was inshore. Currently, she takes care of Logan only on the days he is with his mother. Ms. Martin testified that there was a change in Logan’s behavior after his parents split. After being with Mr. Chau-vin for a week, Logan was aggressive with the other children. He was pushy, hit others, and used bad language. Normally by Thursday, using time outs, there was improvement. Then, after a week, it started all over again. Ms. Martin stated that Logan is very affectionate with Ms. Bourg. On cross-examination, she admitted that she considered Ms. Bourg her friend.
Mr. Chauvin argues that the trial court erred because it made no determination that Ms. Bourg had met her burden of proving that there had been a change in circumstances. Although the trial court gave no oral or written reasons for judgment, based on the modification of custody, the trial court had to have concluded that there was a change materially affecting Logan’s welfare since the original decree. Further, based on our review of the record, we find |nthat a material change in circumstances had occurred since the rendition of the stipulated judgment. Mr. Chauvin’s work schedule had changed significantly. His work schedule was such that he was gone from the home from approximately 4:30 a.m. to 6:30 p.m. Thus, there were real questions as to who was watching Logan when he was in the care of his father. Additionally, the evidence showed a change in Logan’s behavior since the rendition of the consent judgment. The evidence indicated that Logan’s behavior was aggressive for several days after being with his father. While Mr. Chauvin blamed the behavior on the daycare, all other testimony linked Logan’s behavior to the time immediately following physical custody with his father.
Having concluded that Ms. Bourg met the first prong of her burden of proof in her request to modify custody, we must next consider whether the modification is *574 in Logan’s best interest. In determining the best interest of the child, LSA-C.C. art. 134 enumerates twelve non-exclusive factors to be considered by the trial court, which include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
|1⅞(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The list of factors set forth in this article is non-exclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. LSA-C.C. art. 134, comment (b); Elliott v. Elliott, 10-0755, p. 7 (La.App. 1 Cir. 9/10/10), 49 So.3d 407. The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in LSA-C.C. art. 134, but should decide each case on its own facts in light of those factors. Moreover, the trial court is not bound to give more weight to one factor over another, and, when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Harang v. Ponder, 09-2182, p. 11 (La.App. 1 Cir. 3/26/10), 36 So.3d 954, 963, writ denied, 10-0926 (La.5/19/10), 36 So.3d 219.
In this case, Mr. Chauvin seems to be focusing on Ms. Bourg’s moral fitness. However, the trial court determined that both parents were fit and proper persons to have the care, custody and control of Logan, having indicated such in its Joint Custody Implementation Plan.[5] The evidence also indicates that Ms. Bourg has been the primary caregiver for Logan and is in the best position to continue to do so. Her employment is in Houma, whereas Mr. Chauvin’s office is in Harvey. Additionally, there were issues regarding Mr. Chauvin’s use of alcohol and concerns regarding Logan’s behavior after a week spent with his father.
After reviewing the record in its entirety, we cannot conclude that the trial court did not consider the factors for awarding custody. Accordingly, we conclude that the record sufficiently supports the finding that it was in Logan’s best interest that *575 Ms. Bourg be designated the domiciliary parent. Thus, we find |13no abuse of the trial court’s discretion and decline to disturb its modification of the parties’ custody.
CONCLUSION
For the foregoing reasons, the January 15, 2010 judgment of the trial court is affirmed. Costs of this appeal are assessed against Todd David Chauvin.
AFFIRMED.

. We note that on August 24, 2009, Mr. Chau-vin filed an ex parte motion and order for a devolutive appeal. The order was signed on August 27, 2009. However, the judgment from which Mr. Chauvin appeals was not signed until January 15, 2010. Thereafter, on January 26, 2010, Mr. Chauvin filed a motion for new trial. At the hearing on the motion for new trial, held on March 5, 2010, the trial court noted that Mr. Chauvin previously filed an appeal and the court was without jurisdiction. It continued the hearing without date. This court then issued a rule to show cause why the appeal was not premature, since the appellate record did not appear to include a ruling on the motion for new trial.
To the extent that Mr. Chauvin’s motion for appeal was premature, we note that any previously existing defect arising from a premature motion for appeal (i.e., one taken before the signing of a final judgment) is cured once the final judgment has been signed. Overmier v. Traylor, 475 So.2d 1094, 1094-95 (La.1985) (per curiam); City of Denham Springs v. Perkins, 08-1937, p. 5 n. 5 (La.App. 1 Cir. 3/27/09), 10 So.3d 311, 317 n. 5, writ denied, 09-0871 (La.5/13/09), 8 So.3d 568.
It is clear that the trial court was without authority to entertain the motion for new trial on March 5, 2010, because its jurisdiction was divested upon the granting of the order of appeal from the judgment pursuant to LSA-C.C.P. art. 2088, following the signing of the judgment. Accordingly; we conclude that Mr. Chauvin’s motion for new trial was waived or abandoned when, on his motion, the order for appeal was signed on August 27, 2009, and *569 judgment was signed on January 15, 2010. See Johnson v. Johnson, 473 So.2d 112, 114 (La.App. 3 Cir.1985). Thus, this appeal is properly before us.

. Article 1, § 22 of the Louisiana Constitution provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.

. This Court, in an unpublished opinion, adopted the five factor analysis utilized by the Goodwin court. See Kinney v. Bourgeois, 06-2384 (La.App. 1 Cir. 9/14/07), 962 So.2d 1234 (table) writ denied, 07-2026 (La.1/7/08), 973 So.2d 730.

. Further, we question the propriety of the imposition of short time limitations in cases involving important issues such as child custody, child support, and interim spousal support. See Lambert v. Lambert, 06-2399, p. 2 *572 n. 1 (La.App. 1 Cir. 3/23/07), 960 So.2d 921, 923 n. 1.

. We note that in the plan, the court also made a provision that neither party was to entertain overnight guests of the opposite sex to whom they were not married while the child was in his or her physical custody.