NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CU 0430

T.A.[1]

VERSUS

R.S.

*Judgment Rendered:*     SEP 2 8 2023

* * * * * * * *

**Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2015-11155, Division K**

**The Honorable Patrice W. Oppenheim, Judge Presiding**

* * * * * * * *

Ernest E. Barrow, III
Covington, Louisiana

Counsel for Defendant/Appellant
R.S.

Zara Zeringue
Kathleen Legendre
Covington, Louisiana

Counsel for Plaintiff/Appellee
T.A.

* * * * * * * *

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

---

[1] In order to protect the identity of the minor child, we refer to the parents and the minor child by their initials throughout this opinion. See Uniform Rules, Courts of Appeal, Rule 5-1 and 5-2.

**THERIOT, J.**

This custody matter is before us on appeal by the mother, R.S., who appeals a judgment of the trial court awarding her and the father, T.A., joint legal custody of their minor child, L.A. For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

R.S. and T.A., who were never married, are the mother and father of L.A., born in October of 2014. The relevant procedural history is as follows.

On March 23, 2015, T.A. filed a *Petition for Ex Parte Provisional Custody, and Rule for Custody and for Drug Testing* in which he alleged that R.S. was abusing drugs and alcohol. Shortly thereafter, on or about March 31, 2015, the parties entered into a "consent order" wherein R.S. agreed to supervised visitation. On April 22, 2015, the parties entered into a consent judgment wherein they agreed to joint legal custody and shared physical custody of the minor child.[2]

On April 20, 2016, R.S. filed a motion to modify custody and visitation in which she alleged that T.A. shoved her on March 30, 2016 at his home and that she suffered serious bodily injury as a result.[3] Per R.S.'s motion, T.A. called the police after the incident; T.A. was ultimately arrested and charged with domestic abuse battery pursuant to La. R.S. 14:35.3. R.S. alleged that she subsequently sought and was awarded a temporary restraining order pursuant to La. R.S. 46:2131, *et seq.*, against T.A.[4] Accordingly, R.S. requested that she be awarded sole custody of L.A. pursuant to La. R.S. 9:364, with T.A. receiving supervised visitation conditioned in part upon his completion of a court-monitored domestic abuse intervention program. On June 6, 2016, T.A. answered R.S.'s April 20, 2016

---

[2] R.S. also agreed to submit to bi-weekly drug and alcohol screens for six months.

[3] R.S. alleged that she "suffered serious bodily injury to her forehead, face, jaw, shoulder and hip (all on the left side)" and that she was diagnosed with a "mild concussion."

[4] T.A. subsequently consented to the issuance of a protective order without admitting to the facts alleged.

2

motion. He denied having shoved R.S. and alleged that R.S. had come to his home "unannounced and drunk." T.A. asserted that any injuries incurred by R.S. were the result of her stumbling and falling.

The parties appeared at a hearing officer conference on or about June 6, 2016, after which the parties stipulated that "[n]either parent shall consume alcohol or smoke in the car when the child is present." Said stipulation was reduced to a judgment and signed by the trial court on June 20, 2016. The hearing officer recommended that T.A. have supervised visitation pending further orders of the court. The hearing officer further recommended that T.A. enroll in and complete a domestic violence class and that both parties undergo mental health evaluations.

On November 2, 2016, the parties entered into a consent judgment wherein they agreed in pertinent part that R.S. would have sole legal custody of the child, with T.A. having unsupervised visitation every other weekend and overnight visitation every Tuesday after daycare/school.

The parties subsequently continued to engage in litigation. Relevant to this appeal, the parties agreed to certain terms on the record at a hearing on April 16, 2019. The parties were instructed to submit a comprehensive judgment, but were unable to agree on the language of same. As a result, the parties submitted competing proposed consent judgments, both of which went unsigned. This issue was remedied in late March 2021, following a March 22, 2021 hearing and the trial court's corresponding signature of a *Consolidated Consent Judgment of Custody, Visitation and Support* on March 31, 2021.

On March 24, 2021, T.A. filed a *Rule to Modify Custody, Alternatively to Increase Custodial Time, Rule for Contempt and Compel and Request for Alcohol and Drug Testing and Other Incidentals*. He alleged that R.S. had been involved in an incident on Thanksgiving 2020 wherein she became intoxicated and engaged in a violent physical altercation with her brother while the minor child was present.

3

He also alleged that R.S. was in contempt of court because she had been drinking alcohol in the presence of the minor child on that occasion. T.A. further alleged that he had smelled alcohol on R.S.'s breath multiple times during exchanges and claimed that he suspected her of regularly abusing alcohol. T.A. sought sole custody of the minor child with R.S. receiving supervised visitation for one year. He further requested that R.S. be ordered to undergo alcohol monitoring and sustain sobriety during that time frame.

On August 26, 2021, R.S. filed a *Rule to Increase Child Support*. On November 5, 2021, T.A. filed an amended rule to modify custody wherein he requested that his child support obligation be reduced.

T.A.'s March 24, 2021 rule, R.S.'s August 26, 2021 rule, and T.A.'s November 5, 2021 amended rule were heard by the trial court on February 17, 2022. In a judgment signed on April 28, 2022, the trial court ruled in pertinent part that R.S. and T.A. would have joint legal custody of L.A., with R.S. being designated as the domiciliary parent.[5] The trial court further ordered R.S. to enroll and participate in Alcoholics Anonymous on a weekly basis and to secure a sponsor. The trial court also ordered R.S. to use a specific type of breathalyzer produced by Westco which takes a photograph of the person using the device for six months. The trial court further found R.S. to be in contempt of court for drinking alcohol in the presence of the minor child on Thanksgiving Day 2020.

On May 5, 2022, R.S. filed a motion to appeal the trial court's April 28, 2022 judgment. On May 6, 2022, T.A. timely filed a motion for new trial wherein he alleged that he should have been provided equal time with the minor child. See La. Code Civ. P. art. 1974. On May 26, 2022, which was prior to any hearing on T.A.'s motion for new trial, the trial court signed R.S.'s order of appeal. On

---

[5] Specifically, the trial court ordered that during the school year, T.A. would have physical custody of L.A. every other Thursday after school until Monday, when he would return L.A. to school. The trial court further ordered the parties to alternate physical custody on a weekly basis during the summer months.

4

October 26, 2022, the trial court held a hearing on T.A.'s motion for new trial. At the conclusion of the hearing, the trial court granted T.A.'s motion for new trial only as it related to its order that R.S. use the Westco breathalyzer. After being informed that a Westco breathalyzer with a simultaneous photography function did not exist, the trial court ordered R.S. to have an interlock device installed on her vehicle within seven days, to remain on the vehicle for one year. The trial court denied the motion for new trial in all other respects. Subsequently, on November 7, 2022, this Court dismissed R.S.'s appeal as premature. On November 15, 2022, the trial court signed a judgment in accordance with its October 26, 2022 ruling, for which notice of judgment was issued on December 1, 2022. On December 1, 2022, R.S. timely filed a new petition for appeal of the April 28, 2022 judgment.

## ASSIGNMENTS OF ERROR

R.S. assigns the following as error:

(1) The trial court manifestly erred and is clearly wrong by not following the standards set forth in La. R.S. 9:364, *et seq.*, and granting [T.A.] joint legal custody despite finding that he has a history of perpetrating family violence.

(2) The trial court manifestly erred in ordering [R.S.] to enroll and participate in Alcoholics Anonymous and by ordering that [R.S.] use a breathalyzer from Westco that takes photographs of the person using the device for six (6) months.

(3) The trial court manifestly erred in holding [R.S.] in contempt of court for drinking alcohol in the presence of the minor child.

## STANDARD OF REVIEW

The best interest of the child is the guiding principle in all custody litigation. *Chauvin v. Chauvin*, 2010-1055 (La. App. 1 Cir. 10/29/10), 49 So.3d 565, 569; see also La. Civ. Code arts. 131 and 134. Keeping in mind that every child custody case must be viewed in light of its own particular set of facts, the jurisprudence recognizes that the trial court is generally deemed to be in the best position to ascertain the best interest of the child given each unique set of circumstances and

5

because of its superior opportunity to observe the parties and the witnesses who testified at the trial. Accordingly, the trial court is vested with a vast amount of discretion in child custody cases, and its determination of custody is entitled to great weight, which will not be reversed on appeal unless an abuse of discretion is clearly shown. *Chauvin*, 49 So.3d at 569; see also *State in the Interest of AR*, 99-0813 (La. App. 1 Cir. 9/24/99), 754 So.2d 1073, 1077-78.

In this case, as in most custody cases, the trial court's determination was based on factual findings, which are subject to the manifest error standard of review. Specifically, an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. See *Chauvin*, 49 So.3d at 569, citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880, 882-83 (La. 1993). Thus, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. *Stobart*, 617 So.2d at 883; *Chauvin*, 49 So.3d at 569.

## DISCUSSION

Assignment of Error #1

In her first assignment of error, R.S. asserts that the trial court manifestly erred by failing to follow the standards set forth in La. R.S. 9:364, *et seq.*, and

6

granting T.A. joint legal custody despite finding that he has a history of perpetrating family violence.

Louisiana Revised Statutes 9:364 provides in pertinent part:

A. There is created a presumption that no parent who has a history of perpetrating family violence, as defined in R.S. 9:362 . . . shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.

B. The presumption shall be overcome only if the court finds all of the following by a preponderance of the evidence:

(1) The perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in R.S. 9:362 . . . after the last instance of abuse.

(2) The perpetrating parent is not abusing alcohol or using illegal substances scheduled in R.S. 40:964.

(3) The best interest of the child or children, considering the factors listed in Civil Code Article 134, requires the perpetrating parent's participation as a custodial parent because of the other parent's absence, mental illness, substance abuse, or other circumstance negatively affecting the child or children.

In its written reasons for judgment, the trial court found "a history of family violence under La. R.S. 9:362."[6] The trial court further found that T.A. had presented uncontroverted evidence that he had successfully completed a court-monitored domestic abuse intervention program and that he is not abusing alcohol or using illegal substances. Our review of the record confirms the same. T.A. has clearly met the requirements of La. R.S. 9:364(B)(1) and (2). Thus, we need only determine whether La. R.S. 9:364(B)(3), which requires consideration of La. Civ. Code art. 134, is satisfied.

Louisiana Civil Code article 134 provides:

---

[6] Louisiana Revised Statutes 9:362(4) defines family violence as follows:

"Family violence" includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children. Family violence does not include reasonable acts of self-defense utilized by one parent to protect himself or herself or a child in the family from the family violence of the other parent.

A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

B. In cases involving a history of committing family violence, as defined in R.S. 9:362, or domestic abuse, as defined in R.S. 46:2132,

including sexual abuse, as defined in R.S. 14:403, whether or not a party has sought relief under any applicable law, the court shall determine an award of custody or visitation in accordance with R.S. 9:341 and 364. The court may only find a history of committing family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.

The trial court's written reasons include its analysis of La. C.C. art. 134. The trial court provided a brief analysis of factors 1, 4, 5, 8, and 12, which we review below. The trial court found the remaining factors to be neutral.

Factor 1 – The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

Regarding factor 1, the trial court found that there is no evidence that the child will be abused by either parent.

Factor 4 - The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

Regarding factor 4, the trial court expressed concern that R.S. lacks the financial capacity to provide the child with his material needs as R.S. had not furnished a home purchased in 2021 as of the time of the trial, which occurred in February 2022.

Factor 5 - The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

Regarding factor 5, the trial court referred to its analysis for factor 4. The trial court further concluded that the homes of both parents are adequate and stable.

Factor 8 - The history of substance abuse, violence, or criminal activity of any party.

Regarding factor 8, the trial court noted R.S.'s history of alcohol abuse, as well as the domestic violence committed by T.A. in 2016. The trial court further noted its concern about whether R.S. continues to drink alcohol, but found that there was no evidence of R.S. abusing alcohol in the presence of the minor child other than the Thanksgiving 2020 incident between R.S. and her brother. The trial

court ultimately found this factor to be neutral, but included a provision in its judgment to address R.S.'s use of alcohol.

Factor 12 - The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

Finally, as to factor 12, the trial court noted R.S.'s failure to list T.A. as a parent on the child's school records. The trial court further pointed out that R.S. listed T.A. as the seventh person to contact in the event of an emergency.

Considering our extensive review of the record, we cannot say that the trial court abused its vast discretion. See *Chauvin*, 49 So.3d at 569. Accordingly, we find that the trial court's judgment granting T.A. joint legal custody is not manifestly erroneous. This assignment of error lacks merit.

Assignment of Error #2

In her second assignment of error, R.S. asserts that the trial court manifestly erred in ordering her to enroll and participate in Alcoholics Anonymous and by ordering her to use a breathalyzer from Westco that takes photographs of the person using the device for six (6) months. Regarding the Westco breathalyzer, R.S. asserts that Westco has never offered a breathalyzer that takes photographs. However, as stated above, this issue was resolved at the hearing on October 26, 2022, after which the trial court granted T.A.'s motion for new trial in part and issued a new judgment ordering R.S. to have an interlock device installed on her vehicle to remain on the vehicle for a total of one year. Because the Westco breathalyzer issue has already been resolved, this issue is moot.

R.S. further argues that the trial court manifestly erred in ordering her to enroll and participate in Alcoholics Anonymous. In her appellate brief, R.S. correctly asserts that the matter heard and judgment agreed to on the record on April 16, 2019 and eventually signed by the trial court includes no provisions

prohibiting the parties from drinking alcohol in the presence of the minor child. However, R.S. ignores the parties' June 20, 2016 judgment which provided that "[n]either parent shall consume alcohol or smoke in the car when the child is present." The June 20, 2016 judgment has never been revoked by any subsequent judgments. When a later judgment does not modify certain provisions of an earlier judgment, the former judgment is not superseded in its entirety. See *Lacour v. Lacour*, 1999-0913 (La. App. 4 Cir. 2/9/00), 763 So.2d 678, 682; see also *State in Int. of R.B., Jr.*, 538 So.2d 726, 727-28 (La. App. 5 Cir. 1989). Accordingly, the June 20, 2016 judgment is still in effect.

We note that Dr. Rafael Salcedo diagnosed R.S. with alcohol use disorder, finding her to be in sustained remission as of 2016. Dr. Salcedo's mental health evaluation was conducted in 2016, over five years prior to the April 28, 2022 judgment. We find an updated evaluation is needed in order to determine the best course of treatment for R.S. Accordingly, the trial court abused its discretion when it ordered R.S. to enroll in and attend Alcoholics Anonymous partially based upon an outdated substance abuse evaluation. We reverse the April 28, 2022 judgment insofar as it ordered R.S. to enroll in and attend Alcoholics Anonymous.

Assignment of Error #3

In her third assignment of error, R.S. argues that the trial court manifestly erred in holding her in contempt of court for drinking in the presence of the minor child. However, as stated above, the parties' June 20, 2016 judgment that "[n]either parent shall consume alcohol or smoke in the car when the child is present" is still in effect.

R.S. has denied drinking in front of the minor child. Her denials are directly contradicted by her admissions during the 911 call she made on Thanksgiving Day 2020 following the physical altercation with her brother. During that call, when asked whether she had been drinking, R.S. stated, "Oh, we've all been drinking,

11

Yes. We - - everybody's been drinking." R.S. also expressed her concerns to the 911 operator that her father would tell deputies that she was a drunk person and that she is unfit to be a mother.

Considering the 911 call from Thanksgiving 2020, we find no error in the trial court's judgment finding R.S. to be in contempt of court for drinking alcohol in the presence of the minor child in November 2020. This assignment of error lacks merit.

## DECREE

For the above and foregoing reasons, the trial court's April 28, 2022 judgment is affirmed in part and reversed in part.[7] Costs of this appeal are assessed one-half to R.S. and one-half to T.A.

## AFFIRMED IN PART AND REVERSED IN PART.

---

[7] We note that the granting of a motion for new trial sets aside and vacates the original judgment on the issue on which a new trial has been granted. *Wilson v. Compass Dockside, Inc.*, 93-1860 (La. App. 4 Cir. 3/15/94); 635 So.2d 1171, 1176; see also *Lemalle v. Winn Dixie Louisiana, Inc.*, 452 So.2d 414, 417 (La. App. 3 Cir. 1984). Accordingly, the trial court's partial grant of T.A.'s motion for new trial set aside and vacated the portion of the original judgment relating to the issue of the breathalyzer. We further reverse the portion of the original judgment ordering R.S. to enroll and participate in Alcoholics Anonymous. The remainder of the April 28, 2022 judgment remains in effect and is affirmed by this Court.